LUTHER E. HALL, Judge pro tem.
Plaintiff, owner of a motel on the Airline Highway, sued defendant for rental allegedly due under the terms of a written lease dated March 1, 1954, covering the restaurant part of the motel. The lease signed by both parties stipulated for a monthly rented of $500 per month, or 15% of the gross receipts monthly, whichever might be greater.
Plaintiff’s claim under the lease amounted to the sum of $42,000 which is 15% of the monthly gross for 21 months plus 10% attorney’s fees subject to a credit for rental paid amounting to $250 per month for 21 months.
The defendant filed a general denial and further alleged that he had signed the written lease together with plaintiff but that the written lease was a mere sham and did not contain the actual agreement of the parties, but was signed at the insistence of the plaintiff for the purpose of misrepresenting plaintiff’s financial status to an insurance company for the purpose of inducing by artifice and deceit the granting of an additional construction loan on the motel premises, as to which increased loan the insurance company had theretofore been disinterested.
Defendant further alleged that the actual rental of the premises agreed upon by the parties was in the sum of $250 per month plus an additional sum of $10 per month for the use of a telephone which true rental defendant paid religiously until such time as the lease was abandoned upon expropriation of the premises by the State.
Defendant also pleaded, but alternatively, and only in the event the Court should find the written lease enforceable, that lessor had consented to a modification of the written lease by accepting the lesser amount each month in full payment of the rent due; and further in the alternative that the plaintiff lessor had never surrendered the entire premises to him and therefore he was en *294 titled to an “off-set” of $75 per month for the space never surrendered to him.
And finally, defendant reconvened for $527.10 for food and drink supplied to plaintiff and for attorney’s fees.
The District Judge rejected plaintiff’s demands and gave judgment in favor of the defendant reconvenor for both the $75 monthly “off-set” claimed and the $527.10 food and drink bill. Plaintiff has appealed from that judgment.
The record shows that prior to the construction of the restaurant, the defendant had been the manager of plaintiff’s motel and the parties had agreed that upon plaintiff’s construction of the restaurant premises, the same would be leased to defendant to operate.
The motel proper had been partially financed by a $70,000 mortgage loan secured by plaintiff from American National Insurance Company and in order-to build the restaurant and some additional motel units and office space, plaintiff desired to increase the loan to $105,000.
The insurance company was, at least hesitant about making the additional loan. Plaintiff’s mortgage broker’s testimony was that the additional loan negotiations “started to cool out.” This cooling out occurred after plaintiff had had his plans and specifications prepared and was ready to start construction. The broker “didn’t think” the additional loan had actually been rejected. All of this was prior to March 1, 1954, the date of the written lease.
However, after another interview by plaintiff and his broker with the insurance company, the additional loan was finally ■granted and the written lease of March 1, 1954, was pledged as additional security for the mortgage.
Defendant contends that the additional loan was secured as a result of the confection of the written lease, and that the same was merely a sham concocted at the instance of plaintiff for that purpose. Defendant testified that in truth and in fact, months prior to the signing of the written lease, he and plaintiff had reached a verbal agreement of lease of the new restaurant premises to be constructed and had agreed upon a rental of $250 monthly, and that it was understood between them that this was and would remain the actual rental, any recitations in the written lease to the contrary notwithstanding.
On the other hand, plaintiff testified there was no agreement other than the written lease calling for $500 per month or 15% of lessee’s gross receipts per month, whichever is greater.
Plaintiff produced four witnesses and the defendant one, but as the District Judge observed, the proof of the claims made by both plaintiff and defendant evolves down to the truthfulness of the testimony of the parties themselves.
Defendant’s testimony is supported by the following circumstances: (1) During the entire 21 months involved, up until the arrangements were terminated by expropriation of the property, defendant in fact paid only $250 per month for rent, and (2) several of defendant’s rent checks bore the notation “Rent in full month of-” (naming the month), and we conclude with the District Judge that those notations were on the checks prior to their endorsement by plaintiff.
Plaintiff attempts to explain the first circumstance above by saying that he permitted defendant to pay less than was due because defendant had just started his restaurant operations and had heavy initial expenses; yet plaintiff himself testified that he knew roughly what defendant’s gross receipts were and the record shows that the gross for the first month was over $6,800 and for the following several months ranged in round figures from $7,400 to $8,400 per month, and was considerably higher in some months.
As to the notations on defendant’s rent checks “Rent paid in full”, plaintiff testified *295 emphatically and repeatedly that he would never accept a check with such notations and that the notations were positively not on the checks when he endorsed and deposited or cashed them. But as the District Judge so observantly noted,
“The one bit of evidence as to the truthfulness of the statement of the plaintiff or the defendant with reference to the notation on the checks, is on check introduced in evidence of date Sept. 7, 1954, which bears the inscription, ‘Rent in full month of August 1954’. Through this notation is perforated the stamp of the bank, the word ‘Paid’. Thus the court believes that it was impossible to have placed this notation on the check after the perforation had been made by the bank.”
This Court likewise has carefully inspected that check, and agrees that the notation was on the check prior to the bank’s “Paid” perforation being made.
There are also other actions on the part of plaintiff which are inconsistent with his present claim that he allowed defendant to underpay his rent every month for the 21 months duration of the lease because defendant had heavy initial expenses. Thus, in December 1954, plaintiff borrowed $500 from defendant, and shortly repaid it; yet at that time, according to his present claim, defendant would have owed him $2,000 past due rent at the very least. Again, plaintiff charged food and drink at defendant’s restaurant, and paid defendant for same by monthly checks up to July 1955, although, plaintiff says, defendant was not paying him the rent he owed, which by that time amounted to $3,250 past-due minimum, and substantially more on the percentage-of-gross basis.
Considering all of the circumstances we have reached the conclusion that there was a verbal agreement between the parties which antedated the written lease fixing the monthly rental at $250.
The written lease was confected at a time and under circumstances which might well justify the conclusion that it was in its entirety merely a simulation to secure an increased loan, and was not intended to have, any effect at all between the parties. But even if the written lease be accepted at face value in other respects the endorsement by plaintiff of the $250 checks marked “rent in full” constitutes an acknowledgment that in truth and in fact the rent as between the parties was only $250 per month.
We therefore conclude that either the verbal contract was never reduced to writing (and the writing was pure simulation) or the written lease was the contract of the parties with the exception that the rent was only $250 per month. In either case plaintiff has been paid in full and his demands must be rejected.
Defendant’s brief treats his original “set-off” rent claim as part of his reconventional demand and apparently a similar mistaken argument caused the District Judge to so consider it. However, defendant’s pleading makes it clear that he claimed the $75 per month for the space never surrendered to him only in the alternative in the event the Court should find defendant liable for rent as stipulated in the written lease. Since the District Judge did not find defendant liable for the rental stipulated in the written lease, no consideration should have been given to the “set-off”. Moreover, this claim was not included in the body or the prayer of the re-conventional demand. In any case it is not clear from the record that defendant was entitled to the space which he contends he was deprived of. The judgment of the District Court must therefore be amended in this respect.
With regard to the $527.10 claimed in re-convention for food and drink purchased by plaintiff, plaintiff admits that he made the purchases and admits the correctness of the amount claimed. Defendant-recoil venor is entitled to judgment for this amount.
*296 ■ The judgment of the District Court in favor of the defendant-reconvenor for $2,-177.10 is therefore amended by reducing the principal amount thereof to $527.10 and, as so amended, is affirmed.
Amended and affirmed.